[Cite as *State v. Byrd*, 2020-Ohio-3073.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-07-073 |
| - vs - | : | O P I N I O N<br>5/26/2020 |
| | : | |
| THOMAS G. BYRD, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 19CR35216

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Craig A. Newburger, 477 Forest Edge Drive, South Lebanon, Ohio 45065, for appellant

**HENDRICKSON, P.J.**

{¶1} Appellant, Thomas G. Byrd, appeals from his conviction in the Warren County Court of Common Pleas for felonious assault. For the reasons discussed below, we affirm appellant's conviction.

{¶2} On March 18, 2019, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D)(1)(a), a felony of the second degree. The charge

arose out of allegations that on February 15, 2019, appellant knowingly caused physical harm to his roommate, Dionne Kellum, by attacking Kellum with a deadly weapon. Using a tomahawk club, appellant struck Kellum a number of times. Kellum suffered lacerations and injuries to the head and face that required staples, stiches, and surgery to repair.

{¶3} Appellant pled not guilty to the charge and a bench trial was held on May 20, 2019. At this time, the state presented testimony from Kellum and three officers who responded to Kellum's home after the incident. Kellum testified that on February 15, 2019, appellant was living at Kellum's residence in Clearcreek Township, Warren County, Ohio. Around 1:00 a.m. that morning, when Kellum and appellant were the only two individuals at the home, Kellum was attacked from behind. At the time of the attack, Kellum was intoxicated, as he had been drinking beer and whiskey. Although some details were "a little fuzzy," Kellum nonetheless recalled that he was hit with something from behind, causing him to fall sideways onto the floor. Once on the floor, Kellum was repeatedly struck on the top of his head and left side of his face. Although Kellum could not see the weapon he was being struck with or see who was swinging the weapon, he heard appellant yelling and cussing at him. Kellum stated he was "completely dazed and confused" and continued to lie on the ground until the attack ended.

{¶4} The attack stopped once appellant went into his bedroom. Kellum called 9-1-1 for assistance as he was bleeding profusely from wounds to his head. An ambulance and law enforcement officers responded to the scene. Kellum was transported to a nearby hospital, where it was discovered that he had eight lacerations to his head as well as injuries to his left eye and ear. Kellum received 20 staples to his head and nine stitches above his left eye. He also suffered injuries to his ear which could only be repaired by surgery. Kellum testified that he has suffered residual medical complications as a result of the attack, which include having a permanent dent in his head, damage to his equilibrium, and feelings of

pain and dizziness. Photographs of Kellum's injuries were admitted at trial.

{¶5} Kellum could not recall if he and appellant were arguing over anything before the attack. He recalled an earlier argument over groceries but did not know what brought about the assault. On cross-examination, Kellum denied that he had ever choked or struck appellant.

{¶6} Warren County Sheriff's Deputy Kyle Cole was the first officer on scene. He testified he arrived at Kellum's residence around 1:18 a.m. When he arrived, he had his police cruiser's lights on, including the cruiser's spotlights. The deputy saw appellant in the far-left window of the home. Appellant was looking out the window at the deputy. Kellum was standing at the front door with both his head and shirt "covered in blood." Once Kellum was outside, Deputy Cole ordered appellant to exit the home. Appellant did not immediately exit the home; it took Deputy Cole ordering him to do so three or four times. Appellant was eventually handcuffed and placed in the back of a police cruiser.

{¶7} Clearcreek Township Police Officer Wendy Blaha was also dispatched to Kellum's home. Upon arriving at the scene, she observed Kellum bleeding profusely from multiple injuries to his head and face. Officer Blaha did not observe any physical or obvious injuries to appellant. Officer Blaha testified that appellant complained of pain when he was in the back of the police cruiser. She questioned him about the pain, and appellant indicated the pain he was feeling was related to prior surgeries he had undergone. Appellant did not indicate that he had been struck or suffered injuries from the altercation with Kellum.

{¶8} Officer Blaha and another Clearcreek Township officer, Corporal Kevin Knobbe, searched Kellum's residence for a weapon. Various items were found in Kellum's home, including a painter's tool and a Native American-style tomahawk club. The painter's tool did not have any blood on it. The club, however, had fresh, wet blood on it and was found concealed between flattened cardboard boxes. Corporal Knobbe testified the club

was made from resin, leather, ceramic and plastic and was missing the top portion – a blunt object, such as a rock or stone. Appellant admitted that the missing piece had separated from the club. The officers were unable to recover the top piece of the club, despite appellant's help in trying to locate it.

{¶9} Corporal Knobbe questioned appellant about the incident, and appellant informed the officer that he and Kellum got into a fight over butter. Appellant told Corporal Knobbe that Kellum had initiated the attack and attempted to harm appellant with a knife, a painting tool, and the tomahawk club. Appellant believed he had been stabbed by either the knife or painter's tool before he was able to use a piece of cardboard to knock the weapon out of Kellum's grasp. Appellant stated he and Kellum wrestled one another to the floor, where they began striking one another with the tomahawk club. Appellant believed he had only hit Kellum three or four times.

{¶10} Corporal Knobbe testified that appellant complained his head and back were hurting. The officer and a medic looked appellant over to see if he had any injuries. As part of this examination, Corporal Knobbe had appellant lift his clothing. Although Corporal Knobbe observed scarring from appellant's prior surgeries, he did not see any bruises, stab wounds, cuts, or fresh injuries to appellant's back, chest, shoulders, upper arms, forearms, hands, or face. Appellant did have dried blood on one of his arms, but he admitted the blood was Kellum's.

{¶11} Following Corporal Knobbe's testimony, the state rested its case. Appellant moved for acquittal pursuant to Crim.R. 29, and the trial court denied his motion. Thereafter, appellant testified in his own defense, claiming that Kellum was the initial aggressor in the attack. According to appellant's version of events, Kellum, who was very drunk and angry, was shouting at appellant because Kellum believed appellant had used his butter. Appellant stated Kellum came at him with a putty knife, screaming "I'm going to kill you."

Appellant testified he was able to grab Kellum's arm and wrestle the putty knife out of his grasp. Appellant was also able to defend himself using pieces of cardboard to deflect the weapon when Kellum tried to use a paint scraper to harm him.

{¶12} Appellant stated he wrestled Kellum to the floor, where the two men continued struggling. At some point, Kellum grabbed the tomahawk club and began to swing it at appellant. Appellant was able to get ahold of the weapon, and he swung it back at Kellum. Appellant contends Kellum twice choked him while the two men were wrestling. While Kellum was choking appellant, appellant stated he beat Kellum's head on the floor. Appellant claimed he lost a tooth when Kellum attacked him.

{¶13} After considering the foregoing testimony, the trial court found appellant guilty of felonious assault. The court stated

> Notwithstanding the fact that Mr. Kellum was not able to recall certain incidents and certain events, I think the direct and circumstantial evidence in this case [is] overwhelming, that you did assault Mr. Kellum with this weapon. It does appear to me to be able to inflict great harm or death as evidenced by the injuries in the case, which were significant. So, I think that the State has met all of the essential elements of their * * * case.

> With regard to self-defense, again, I don't find your testimony on this to be particularly believable Mr. Byrd. * * * We still have issues about whether or not you believe[d] that you were in imminent danger. It doesn't seem like you really were and it does seem like the response in the case was wholly disproportionate to anything that might have been. But, again, I mean, I want to be clear on this, I do not believe that you were acting in self-defense.

The court subsequently sentenced appellant to three years in prison.

{¶14} Appellant appealed his conviction, raising the following as his only assignment of error:

{¶15} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN

APPELLANT'S CONVICTION FOR ONE COUNT OF FELONIOUS ASSAULT, 2903.11(A)(2) AND 2903.11(D)(1)(A), A FELONY OF THE SECOND DEGREE.

{¶16} In his sole assignment of error, appellant argues his conviction for felonious assault is not supported by sufficient evidence and is against the manifest weight of the evidence. Appellant contends that under recently modified R.C. 2901.05, the state failed to prove beyond a reasonable doubt that he did not act in self-defense when he struck Kellum with the club.

{¶17} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶18} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶19} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." A person acts knowingly when, "regardless of purpose * * * the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶20} A deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). "[A]n instrumentality can become 'deadly' depending upon the manner and the situation in which it is used." *State v. Griffith*, 12th Dist. Butler No. CA95-10-167, 1996 Ohio App. LEXIS 4539, *15 (Oct. 14, 1996), citing *State v. Deboe*, 62 Ohio App.2d 192, 193 (6th Dist.1977). "Within the meaning of R.C. 2923.11(A), a deadly weapon may include blunt objects or instruments capable of being used as bludgeons." *Id.*

{¶21}  After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for felonious assault is supported by sufficient evidence and is not against the manifest weight of the evidence.  The state presented testimony and evidence from which the trial court judge, acting as the trier of fact, could have found all of the essential elements of the offense proven beyond a reasonable doubt.  Kellum testified he was hit repeatedly about the head and the face by a weapon.  Although Kellum could not identify the weapon that was used to strike him, appellant admitted to striking Kellum with a tomahawk club.  This club, which was concealed behind a pile of flattened cardboard boxes, was recovered from the scene of the crime and contained fresh, wet blood.  Though the club was intended as a design piece, it was adapted for use as a weapon and was capable of inflicting death when used as a bludgeon.  The trial court judge was entitled to find that appellant knowingly caused physical harm to Kellum when he used the weapon to repeatedly strike Kellum in the head and face.  Kellum suffered physical harm from the attack, as evidenced by the fact that 20 staples and nine stitches were required to close lacerations on his head and face, he needed surgery to repair damage to his ear, and he continued to suffer from pain and equilibrium problems months after the attack.  The evidence at trial, therefore, established all the elements of felonious assault beyond a reasonable doubt.

{¶22}  Appellant nonetheless argues that the trial court erred in finding him guilty of the offense as the state failed to meet its burden of demonstrating that he had not acted in self-defense when striking Kellum repeatedly with the club.  "Traditionally, self-defense has been an affirmative defense which an accused must prove by a preponderance of the evidence."  *State v. Debord*, 12th Dist. Clinton No. CA2019-03-003, 2020-Ohio-57, ¶ 13.  However, effective March 28, 2019, the General Assembly modified Ohio's self-defense statute, R.C. 2901.05, in Am.Sub.H.B. 228 to place the burden on the state to prove beyond

a reasonable doubt that the accused did not act in self-defense. As amended, R.C. 2901.05(B)(1) provides as follows:

> A person is allowed to act in self-defense, defense, of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, *the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence*, as the case may be.

(Emphasis added.)

{¶23} An accused is justified in the use of force against another if (1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the accused did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus; *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). Due to the recent amendment to R.C. 2901.05(B)(1), the state had to disprove one of the aforementioned elements of self-defense beyond a reasonable doubt. *See State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31, citing *Robbins* at paragraph two of the syllabus.[1]

{¶24} A defendant has "no duty to retreat before using force in self-defense in [his] own home." *State v. White*, 12th Dist. Warren CA2018-09-107, 2019-Ohio-4312, ¶ 45,

---

1. As the Tenth District noted in *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31,

> the prosecution was required to disprove self-defense by proving beyond a reasonable doubt that [the defendant] (1) was at fault in creating the situation giving rise to the affray, OR (2) did not have a bona fide belief that he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape, OR (3) did violate a duty to retreat or avoid the danger.

citing *State v. Thomas*, 77 Ohio St.3d 323, 327 (1997). Furthermore, a defendant is privileged to use that force which is reasonably necessary to repel the attack of another. *Id.* at ¶ 46. The use of force must be warranted under the circumstances and proportionate to the perceived threat. *Id.*

{¶25} Contrary to appellant's assertions, the state proved beyond a reasonable doubt that appellant did not act in self-defense when he repeatedly struck Kellum's face and head with the club. Appellant testified Kellum was the initial aggressor in the attack, as he attempted to stab or cut appellant with a putty knife and paint scraper. After disarming Kellum of the weapons, appellant claims he wrestled Kellum to the floor, where Kellum choked him and struck him with the tomahawk club. The state, however, introduced evidence that was wholly inconsistent with this version of events and established beyond a reasonable doubt that appellant was the initial aggressor in the attack.

{¶26} Kellum's injuries were to the top of his head and the left side of his face, which supports Kellum's testimony that he was attacked from behind and repeatedly struck as he laid on his side on the floor. Conversely, though appellant claims Kellum attacked him first, that the two wrestled on the ground, that he was choked, and that he was hit with the club, there was no physical evidence supporting appellant's version of events. Appellant did not have any stab wounds, bumps, bruises, or defensive wounds to his head or body when he was examined by Corporal Knobbe. The only pain appellant complained of when he was speaking to law enforcement on the morning of the attack was related to his prior surgeries. He did not mention having a tooth knocked out to law enforcement. Furthermore, the only blood on appellant's body belonged to Kellum. Other than the club, which appellant admitted he used to strike Kellum, there were no knives or tools found in the home with blood on them. Likewise, there were no pieces of slashed or damaged cardboard found in the home.

{¶27} Given that the trial court found appellant was not a credible witness and that there was no physical evidence to support appellant's claim that Kellum was the initial aggressor, the trial court did not err when it found the state proved beyond a reasonable doubt that appellant had not acted in self-defense. Appellant's conviction for felonious assault is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.

{¶28} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.