[Cite as *State v. Clemmons*, 2020-Ohio-5394.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO/CITY OF HAMILTON, | : | CASE NO. CA2020-01-004 |
| Appellee, | : | O P I N I O N<br>11/23/2020 |
| | : | |
| - vs - | : | |
| | : | |
| JUAN FREDERICK CLEMMONS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 19CRB04168

Neal Schuett, Hamilton City Prosecutor, 345 High Street, 2nd Floor, Hamilton, Ohio 45011, for appellee

Caparella-Kraemer & Associates, LLC, Tyler W. Nagel, 4841-A Rialto Road, West Chester, Ohio 45069, for appellant

**M. POWELL, J.**

{¶ 1}   Appellant, Juan Clemmons, appeals his conviction in the Hamilton Municipal Court for assault and aggravated menacing.

{¶ 2}   Appellant was indicted for assault, aggravated menacing, and misconduct at

an emergency following an October 2, 2019 physical altercation between appellant and Kenneth Wells during which appellant assaulted Wells and Wells cut appellant with a box cutter. It is undisputed that at the time of the incident, appellant was on probation, having pled guilty to assaulting Wells in 2018. On January 8, 2020, appellant pled guilty to misconduct at emergency; the matter then proceeded to a bench trial on the assault and aggravated menacing charges. Wells and Hamilton Police Officer Zachary Strack testified on behalf of the state. Appellant testified on his own behalf.

{¶ 3} Wells testified that on the evening of the incident, he, his wife Arquita, and an elderly woman were sitting on a bench, talking. Thirty minutes earlier, appellant had walked by them and had asked for a drink; Wells had given him half a beer. After appellant came back, he chatted with the elderly woman then turned to Wells and stated, "You know I'm still going to court behind this stuff with you." Appellant was very agitated and tense, "like he [was] ready to attack."

{¶ 4} As Arquita and the elderly woman tried "to grab" appellant "and direct him the other way down the street," appellant shoved both women out of the way, lunged at Wells, and tried to grab him by the neck. Wells was on the bench. As he was "scooting back away" from appellant who kept lunging at him, Wells fell off the bench. As appellant's assault continued, Wells reached in his pocket and pulled out a box cutter, swung at appellant with the knife, and started "cutting at him." Wells stated he did not know how many times he cut appellant but remembered cutting him across the chest. The physical altercation ended only after Arquita took the knife away from the two men and Wells pushed appellant away. Wells and Arquita then walked to his uncle's house and called the police. Wells suffered injuries as a result of the attack.

{¶ 5} Officer Strack was dispatched to the scene and found Wells on the front steps of Wells' uncle's house. Wells had lacerations on his arm; medical personnel were

attending to his injuries. Shortly thereafter, the officer observed appellant walking down the sidewalk and coming toward Wells, yelling and armed with a large knife. Officer Strack and three other police officers created a wall and ordered appellant to drop the knife. Appellant ultimately complied after multiple commands but refused to get on the ground. He was then tazed by one of the officers.

{¶ 6} Following Officer Strack's testimony, the state rested its case-in-chief. Appellant moved for acquittal pursuant to Crim.R. 29(A), and the trial court denied the motion. Appellant took the stand in his own defense, presenting a different version of the incident and claiming self-defense.

{¶ 7} Appellant testified that October 1, 2019, was a good day because it was his grandson's 18th birthday. Feeling happy, appellant had a barbeque in the backyard of his aunt's house. Appellant, Wells, and Arquita socialized over beers in the backyard for about two hours. Around 1:30 p.m., appellant went to Cincinnati to spend time with his grandchildren. He returned to Hamilton around 11:30 p.m. and decided to go on a walk, shirtless, "because it was a nice summer night." A few blocks into his walk, he came upon Wells, Arquita, and a woman sitting on a bench. Wells and Arquita were sharing a beer. Appellant gave them each a cigarette and the group chatted for several minutes.

{¶ 8} Appellant was ready to move on when Wells stated he wished he had another beer. Appellant offered to lend $5 to Arquita for her to purchase beer. Wells took offense and stepped up to appellant, asking, "why you all up in our business like that?" Arquita pulled money out of her purse and told Wells, "baby, I got you some money," to which appellant replied, "see, your bottom bitch got you."[1] Noticeably upset, Wells "jumped up,"

---

1. Appellant defined "bottom bitch" as "a girl that do anything that her man says," "a go-getter, a hustler, when your man say we broke, go get the money." Immediately before this definition, appellant testified that Wells and Arquita do not have a house "but he have his girl out there on the street, but he gets upset when somebody comments on the situation."

held up a box cutter to appellant's neck, and stated, "I told you about getting into me and my girl's business."

{¶ 9}   As Arquita intervened and pulled the two men apart, appellant's neck was cut a first time when "the knife went down."  Wells subsequently cut appellant two more times with the box cutter, telling him, "I told you I was going to get your mother fucker ass."  In an effort to defend himself, appellant charged Wells, bit him on the chest, and slammed him to the ground.  As appellant "shook [Wells] like a pit bull" in an attempt to grab the knife, Arquita took possession of the knife and stabbed appellant five or six times on his back, ear, and head.  The altercation ended when appellant "jumped up and ran" home.  Appellant denied hitting or choking Wells during the altercation, claimed he only acted in self-defense, and asserted that Wells was the primary aggressor.  Appellant received 87 "staples and stitches" as a result of the altercation.  Appellant admitted returning to the scene armed with a butcher knife and stating, "where they at now," because he wanted to "even up the score."

{¶ 10} Following closing arguments, the trial court issued a decision from the bench finding appellant guilty of assault and aggravated menacing.  The trial court found no merit to appellant's claim he was acting in self-defense during the physical altercation.  The trial court further found that Wells' testimony was credible whereas appellant's "outlandish and outrageous" testimony was not.  Specifically, the trial court stated when issuing its decision:

> So I'm finding [defendant] to be guilty * * * of the assault, and
> I'm going to find that the State did disprove self defense.
>
> There was no testimony from [defendant] that * * * any of the
> things that Mr. Wells said happened here, choking him, being
> on top of him, hitting him, were in any way related to self
> defense, and the Court finds that they weren't, and Mr. Wells
> was not the first aggressor, that [defendant] was.
>
> And so it's clear that he got cut, I can see that.  Everybody in
> the courtroom can see that, but those were in reaction to his
> own actions that started this and that he is guilty of assault for.

{¶ 11} Immediately after finding appellant guilty, the trial court sentenced appellant. Later that day, the trial court issued three separate judgment entries that noted its verdict finding appellant guilty of assault, aggravated menacing, and misconduct at emergency as well as its sentencing decision.

{¶ 12} Appellant now appeals, raising three assignments of error.[2] The second and third assignments of error will be addressed together.

{¶ 13} Appellant's assignments of error challenge his convictions for assault and aggravated menacing, arguing that (1) his conviction for aggravated menacing is not supported by sufficient evidence and thus, the trial court erred in denying his Crim.R. 29 motion for acquittal, and (2) his convictions for assault and aggravated menacing are against the manifest weight of the evidence.

{¶ 14} The standard of review for a denial of a Crim.R. 29 motion is the same standard used for reviewing a sufficiency of the evidence challenge. *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would support a conviction. *State v. Gross*, 12th Dist. Preble No. CA2018-01-001, 2018-Ohio-4557, ¶ 15. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 15} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148,

---

2. Without explanation and to our disappointment, we note that the state did not file a brief.

2020-Ohio-3835, ¶ 10. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

{¶ 16} Questions regarding witness credibility and weight of the evidence are primarily matters for the trier of fact to decide because the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. *State v. White*, 12th Dist. Butler No. CA2019-07-001189, 2020-Ohio-3313, ¶ 39. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF ASSAULT.

{¶ 19} Appellant argues that his assault conviction is against the manifest weight of the evidence because the state failed to disprove he acted in self-defense. In support of his argument, appellant underlines the fact he was unarmed and by himself whereas Wells was armed and accompanied by two persons. Appellant further asserts that Wells' testimony was clearly not credible because it was replete with inconsistencies. Such inconsistencies included the time of the altercation, whether Wells attended appellant's barbeque earlier that day, how many beers Wells drank that day, whether Wells worked that day, whether he pulled a knife on appellant, and whether Arquita ever held the box

cutter.[3]

{¶ 20} Appellant was convicted of assault in violation of R.C. 2903.13(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A victim's testimony is all that is needed to "sustain a conviction for assault in violation of R.C. 2903.13(A) if the victim's testimony proves all the elements of the offense." *State v. Lunsford*, 12th Dist., Butler No. CA2019-07-116, 2020-Ohio-965, ¶ 13.

{¶ 21} Traditionally, self-defense has been an affirmative defense which an accused must prove by a preponderance of the evidence. *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 47. However, effective March 28, 2019, the General Assembly amended Ohio's self-defense statute, R.C. 2901.05, to place the burden of proof on the state to prove beyond a reasonable doubt that the accused did not act in self-defense. R.C. 2901.05(B)(1).

{¶ 22} In a case involving use of nondeadly force, an accused is justified in using force against another if (1) he was not at fault in creating the situation giving rise to the altercation and (2) he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect himself from the danger was by the use of force not likely to cause death or great bodily harm. *State v. Saturday*, 12th Dist. Butler No. CA2018-06-122, 2019-Ohio-193, ¶ 12.[4] Due

---

3. Wells denied spending time with appellant in the backyard of appellant's aunt on the day of the incident and stated it happened a few days before.

4. It is well established that in cases involving use of *deadly* force, the elements of a valid claim of self-defense are as follows: (1) the accused was not at fault in creating the situation giving rise to the affray; (2)

to the recent amendment to R.C. 2901.05(B)(1), the state had to disprove one of the elements of self-defense beyond a reasonable doubt. *White*, 2020-Ohio-3313 at ¶ 39.

{¶ 23} After thoroughly reviewing the record, we find that the trial court did not lose its way and create a manifest miscarriage of justice in finding appellant guilty of assault. As stated above, one claiming self-defense must not be at fault for creating the situation giving rise to the affray. *State v. Daley*, 10th Dist. Franklin No. 19AP-561, 2020-Ohio-4390, ¶ 48. Contrary to appellant's assertions, the greater amount of credible evidence offered at trial established beyond a reasonable doubt that appellant was the initial aggressor in the physical altercation. Despite appellant's probation status as a result of pleading guilty to assaulting Wells in 2018, appellant chose to interact with Wells while out on a walk on the night of the incident and tell Wells he would pursue judicial action against him. Alternatively, appellant chose to make derogatory remarks about Wells' wife according to appellant's version of the events. Although appellant denies he initiated the attack on Wells, claiming he only ran into Wells and bit him on the chest after Wells cut him several times, the evidence introduced by the state was wholly inconsistent with appellant's version of events. Wells testified appellant attacked him first, causing physical harm to his arm, back, forehead, and neck when appellant lunged at him, grabbed him by the neck, and kept

---

the accused had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape from such danger was in the use of such force; and (3) the accused did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24, 2002-Ohio-68; *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. Conversely, in cases involving the use of *nondeadly* force, there is no duty to retreat or avoid the danger. *See State v. Davis*, 10th Dist. Franklin No. 19AP-521, 2020-Ohio-4202; *State v. Petway*, 11th Dist. Lake No. 2019-L-124, 2020-Ohio-3848. We note that in two recent cases, this court erroneously listed the duty to retreat or avoid danger while setting forth the elements of self-defense even though the cases involved use of nondeadly force. *See State v. Byrd*, 12th Dist. Warren No. CA2019-07-073, 2020-Ohio-3073; *State v. Fritts*, 12th Dist. Butler No. CA2019-10-173, 2020-Ohio-3692. We further note that whereas an accused was required to prove *all* elements of self-defense, whether deadly force was used or not, before the March 28, 2019 amendment of the Ohio's self-defense statute, R.C. 2901.05, the state is only required to disprove one of the elements pursuant to amended R.C. 2901.05. The erroneous listing of the duty to retreat or avoid danger element in *Byrne* and *Fritts* had no impact on the outcome of the cases as the state proved beyond a reasonable doubt that the defendant was the initial aggressor and thus, at fault in creating the situation giving rise to the altercation.

assaulting him on the bench and on the ground. Officer Strack testified that Wells had lacerations on his arm and was treated by medical personnel after the altercation. Wells testified he ended up going to the hospital.

{¶ 24} The trial court was presented with conflicting versions of events by appellant and Wells. However, as the trier of fact, the trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations to judge the credibility of witnesses and the weight to be given the evidence. *Id.*; *State v. Prickett*, 12th Dist. Butler No. CA2017-01-010, 2017-Ohio-8128, ¶ 21. The trial court found that Wells' testimony was credible whereas appellant's testimony was "outlandish and outrageous" and "made up" specifically for trial purposes. While conflicting evidence was presented at trial, appellant's conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony and evidence presented by the state. *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. Even though this court may consider the credibility of the witnesses in conducting our manifest-weight analysis, on this record, we do not perceive any justifiable reason to second-guess the credibility determinations made by the trial court. *Daley* at ¶ 48.

{¶ 25} Accordingly, as the state proved beyond a reasonable doubt that appellant was the initial aggressor and knowingly caused physical harm to Wells by attacking him, we find that appellant's assault conviction is not against the manifest weight of the evidence.

{¶ 26} Appellant's first assignment of error is overruled.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF AGGRAVATED MENACING.

{¶ 29} Assignment of Error No. 3:

{¶ 30} THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM.R. 29

MOTION FOR ACQUITTAL ON THE CHARGE OF AGGRAVATED MENACING.

{¶ 31} Appellant argues that his conviction for aggravated menacing is not supported by sufficient evidence and thus, the trial court erred in denying his Crim.R. 29 motion for acquittal, and is against the manifest weight of the evidence because the state failed to prove Wells believed appellant would cause him serious physical harm.

{¶ 32} The aggravated menacing statute, R.C. 2903.21(A), provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶ 33} In order to prove aggravated menacing, the state is not required to show that the offender is able to carry out the threat or even that the offender intended to carry out the threat. *State v. Salinger*, 12th Dist. Butler No. CA2014-10-208, 2015-Ohio-2821, ¶ 17. The state must, however, show that the victim had a subjective belief of fear of serious physical harm. *State v. Landrum*, 1st Dist. Hamilton No. C-150718, 2016-Ohio-5666, ¶ 9; *see also State v. Gardner*, 8th Dist. Cuyahoga No. 104677, 2017-Ohio-7241; *In re Fugate*, 10th Dist. Franklin No. 01AP-1195, 2002-Ohio-2771. Evidence of a person's belief that an offender will cause serious physical harm can be proven with circumstantial evidence. *Landrum* at ¶ 9; *Cleveland v. Reynolds*, 8th Dist. Cuyahoga No. 105546, 2018-Ohio-97, ¶ 6.

{¶ 34} The aggravated menacing charge was based upon appellant's return to the scene within minutes of his physical altercation with Wells and his approach of a house where medical personnel were attending to Wells' injuries. Appellant was walking on a sidewalk armed with a large butcher knife, yelling; Wells was on the front steps of the house. The trial court found that appellant's actions constituted "an imminent threat of serious physical harm to another person" and consequently found appellant guilty of aggravated

menacing.

{¶ 35} Upon viewing the evidence in the light most favorable to the state, we find that the state did not present sufficient evidence to prove that Wells believed he was in danger of serious physical harm. Wells testified that he heard appellant "yell out, yeah, I'm Juan Clemmons, I'm the one you all looking for." Asked whether appellant verbally threatened him, Wells replied appellant never did, be it prior to or during the time appellant had the butcher knife. Wells stated he did not know how large the knife was because he "really didn't see it;" furthermore, Wells "was just pretty much trying to get something done about [his] arm." Officer Strack testified that appellant was walking down the sidewalk "towards the medics" attending to Wells. Appellant was armed with a large knife and yelling. The officer alternatively testified that he was unable to understand and could not recall what appellant was yelling. Asked whether appellant was walking slowly or aggressively, the officer replied that appellant "was just walking down the sidewalk."

{¶ 36} Neither Wells nor Officer Strack testified that appellant was yelling in a threatening manner as he was approaching Wells. More importantly, Wells did not testify to any subjective belief appellant would cause him serious physical harm. There was no evidence that Wells was scared or rattled from the incident. The testimony was therefore insufficient to establish that Wells believed appellant would cause him serious physical harm even when viewed in a light most favorable to the state. *State v. Mallory*, 8th Dist. Cuyahoga No. 106052, 2018-Ohio-1846, ¶ 11; *Garfield Hts. v. Greer*, 8th Dist. Cuyahoga No. 87078, 2006-Ohio-5936, ¶ 7.

{¶ 37} We therefore conclude that the state failed to establish an essential element of the offense of aggravated menacing and that the trial court erred in denying appellant's Crim.R. 29 motion for acquittal at the close of the state's case-in-chief. Appellant's conviction for aggravated menacing is accordingly reversed and vacated. Our disposition

- 11 -

of appellant's sufficiency argument moots his manifest weight of the evidence argument. Appellant's second and third assignments of error are sustained.

{¶ 38} Judgment affirmed in part and reversed in part.

HENDRICKSON, P.J., and RINGLAND, J., concur.