[Cite as *State v. Browning*, 2022-Ohio-2530.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2021-10-132 |
| Appellee, | : | O P I N I O N |
| | | 7/25/2022 |
| | : | |
| - vs - | : | |
| | : | |
| VIRGUS BROWNING, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 21 CRB 02108

Laura R. Gibson, City of Hamilton Prosecuting Attorney, for appellee.

Christopher P. Frederick, for appellant.

**M. POWELL, P.J.**

{¶ 1}   Appellant, Virgus Browning, appeals his conviction in the Hamilton Municipal Court for assault.

{¶ 2}   Appellant was charged by complaint with assault following an August 23, 2021 altercation between appellant and Michael Kirby during which appellant held down Kirby on the hood of a car and Kirby suffered a lump on his head and a black eye.  Appellant did not suffer any injuries.  The matter proceeded to a bench trial on October 25, 2021.  Kirby,

Hamilton Police Officer Frank Parrado, and Alexis Gordon, a friend of Kirby, testified on behalf of the state. Appellant, his uncle Jason Browning ("Uncle"), and appellant's mother, Heather Quante, testified on appellant's behalf.

{¶ 3} At the time of the incident, appellant and Kirby were both residing in the same apartment complex in Hamilton, Ohio. On August 23, 2021, as appellant was driving out of the parking lot of the apartment complex, Kirby, Gordon, and Robert Sturgill, Kirby's then boyfriend, yelled at appellant to "slow the F down!" Appellant stopped his vehicle, and accompanied by Uncle, angrily approached Kirby and his friends. Appellant and Kirby were yelling and cussing at one another.

{¶ 4} The state and the defense presented two different versions of the ensuing assault. Kirby and Gordon both testified that appellant pushed Kirby who fell backward onto the hood of his car. Gordon subsequently withdrew from the situation and saw nothing else. Kirby testified that after he fell backward onto the hood of his car, appellant hit him in the face on the left side toward his eye. Kirby then ran toward the apartment complex, chased by appellant, barricaded himself in the building, and called the police.

{¶ 5} Appellant and Uncle testified that appellant approached Kirby and his friends to determine what the problem was. Uncle testified that during the altercation, appellant was over Kirby, telling him to "chill out"; Kirby was swinging at appellant. Uncle testified that appellant never touched Kirby. As Kirby drew back on appellant, the latter "just kind of stopped him." No one was hit; no punches were thrown. Uncle testified that as soon as the altercation became heated, he grabbed appellant by the waist and walked him backwards. Kirby yelled at Sturgill to stab appellant. While pulling appellant away from Kirby, Uncle was stabbed in the arm. Uncle then left the scene to go to the hospital.

{¶ 6} Appellant testified that during the heated verbal exchange, Kirby was getting ready to punch him when the latter caught it. Appellant turned around, stating "oh, you're

going to hit me," and came toward Kirby. Kirby fell back onto the hood of his car. Appellant then "placed one hand on [Kirby's] knee, one hand on his shoulder," and told him to calm down. As appellant removed his hands and backed up, Sturgill pulled out a knife. Uncle was stabbed as he was grabbing appellant to physically remove him from the scene. Appellant admitted he was angry at Kirby but denied punching or hitting him in the face, giving him a black eye, or threatening him. Appellant admitted he put his hands on Kirby and held him down but denied he used force in doing so and denied he pushed him. When asked if he caused harm to Kirby in putting his hands on him, appellant replied, "I don't know. He is kind of sensitive or something. I don't know, whatever. I guess so."

{¶ 7} On cross-examination, appellant testified he was ready to defend himself when Kirby tried to hit him a second time. However, "all I had to do was kind of just turn around and [Kirby] fell back on his car." Appellant then put his hands on Kirby. On redirect-examination, appellant testified Uncle grabbed him and pulled him away because Uncle "thought I was going to hit somebody, because it was starting to get heated. But I would've head butted his fist so hard it would have broke if it hit me."

{¶ 8} Officer Parrado responded to the scene, talked to appellant, and obtained written statements from Kirby and Gordon. The officer described appellant as "pretty upset," "pretty fired up." Appellant told the officer he became "really upset" when Kirby told him to slow down; the two engaged into a verbal altercation and Kirby attacked him; Sturgill then stabbed Uncle. Officer Parrado testified that appellant did not acknowledge physically grabbing or touching Kirby. Appellant did not have and did not report injuries. By contrast, Kirby had a recent lump on his head and later developed a black eye.

{¶ 9} Quante, appellant's mother, testified she had driven appellant to court for a previous pretrial hearing when she heard Kirby tell an individual in the hallway, "He hit us and that's what we're saying." Quante testified she recognized Kirby from the apartment

complex, having spoken to him when she helped appellant move into the apartment complex. Quante acknowledged she did not know the person Kirby was talking to and assumed it was Sturgill. Quante also acknowledged she did not know what Kirby and the other individual were talking about. Kirby denied making the statement to anybody in the hallway and testified Sturgill never came to the trial court.

{¶ 10} At the conclusion of the case, the trial court found appellant guilty of assault based upon his testimony:

> If I accept your testimony completely, then you have committed assault. So based on your testimony, you held him down when he fell down on the hood of the car. Okay. So I'm going to find you guilty of assault on that basis.
>
> Contingently, * * * I'm going to comment on two – two things.
>
> First of all, it's not clear to me who hit Mr. Kirby. He says it was you. Ms. Gordon doesn't – didn't testify to that. So I have a reasonable doubt who hit him in the eye. I don't think there has been enough evidence about that.
>
> Your uncle's testimony was * * * troubling to the Court in the sense that your uncle actually testified that he grabbed you and tried to pull you away. So he must have thought or he had a belief that you were going to assault him or you had assaulted him.
>
> So, if I take his testimony, find his testimony credible, I could find you guilty of attempted assault. But I'm just basing it strictly on what you told the Court.
>
> [I]f Mr. Kirby * * * fell down, there was no reason in this Court's mind that you were threatened, that you had to defend yourself. You should have just went away then. But you actually physically had contact with him. So for those reasons, again, I find you guilty of assault.

{¶ 11} Appellant now appeals, raising one assignment of error:

{¶ 12} MR. BROWNING'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Appellant argues his assault conviction is against the manifest weight of the

evidence. Appellant asserts the trial court lost its way in finding him guilty of assault based upon his testimony he placed his hands on Kirby in an effort to calm him down.

{¶ 14} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Clemmons*, 12th Dist. Butler No. CA2020-01-004, 2020-Ohio-5394, ¶ 15. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

{¶ 15} Questions regarding witness credibility and weight of the evidence are primarily matters for the trier of fact to decide because the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. *Id.* at ¶ 16. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.; State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52.

{¶ 16} Appellant was convicted of assault in violation of R.C. 2903.13(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶ 17} After thoroughly reviewing the record, we find that the trial court did not lose its way and create a miscarriage of justice in finding appellant guilty of assault. By his own admission, appellant deliberately and angrily approached Kirby after the latter told him to slow down. Appellant was angry at Kirby for being told what to do. As his testimony

indicated, appellant was also generally angry at Kirby regarding the latter's behavior at the apartment complex on previous occasions. The record shows that during their heated verbal altercation, appellant pushed Kirby or forced him to fall onto the hood of his car. Subsequently, appellant put his hands on Kirby and held him down. The record shows and appellant testified that Uncle physically removed appellant because Uncle "thought [appellant] was going to hit somebody, because it was starting to get heated." Although the trial court found that the evidence did not prove beyond a reasonable doubt that appellant punched Kirby, the evidence is uncontroverted that Kirby suffered a lump to the head and a black eye from the altercation. There is no evidence Kirby was engaged in the altercation with anyone other than appellant. An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Clemmons*, 2020-Ohio-5394 at ¶ 15. Such is not the case here. Appellant's assault conviction is therefore not against the manifest weight of the evidence.

{¶ 18} Appellant's assignment of error is overruled.

{¶ 19} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.