[Cite as *State v. Cody*, 2023-Ohio-4781.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-05-010 |
| | : | O P I N I O N |
| - vs - | | 12/28/2023 |
| | : | |
| DONALD E. CODY, | : | |
| Appellant. | : | |

APPEAL FROM CLINTON COUNTY MUNICIPAL COURT
Case No. CRB2200673 A-B

The VanNoy Firm, and Christie Bebo, for appellant.

Sarah C. McMahon, City of Wilmington Prosecutor, for appellee.

**PIPER, J.**

{¶ 1} Appellant, Donald E. Cody, appeals his convictions after a bench trial in the Clinton County Municipal Court for two counts of assault pursuant to R.C. 2903.13(A). For the reasons discussed below, we affirm Cody's convictions.

{¶ 2} On October 23, 2022, Anthony Dugan and Donald Doughman were helping Doughman's daughter move out of her home in Martinsville, Ohio. That afternoon, Dugan and Doughman took a break and drove to Brown's Carryout, a drive-thru convenience store

they both frequented, to buy drinks and cigarettes. Dugan drove his truck, Doughman rode in the front passenger seat, and another mover they had just met that day, Josh, joined them in the rear passenger seat.

{¶ 3} Dugan and Doughman were aware that Cody worked at the drive-thru, but did not expect to see him there, knowing that Cody was usually scheduled to work evenings. Earlier that year, Cody and one of his friends were involved in a scuffle with Dugan. Since then, Cody had tried several times to fight Dugan and spray him with mace. In response, Dugan had previously warned Cody that he carried a pocketknife and would defend himself.

{¶ 4} When Dugan, Doughman, and Josh pulled into the drive-thru, they found that Cody's wife, Misty Cody (Misty), was working inside at the window, and Cody was standing inside behind her. Dugan, Doughman, and Josh gave their purchase order to Misty, who then stepped away to gather the items. Cody then noticed Dugan sitting in his truck and walked up to the window to confront him. Doughman testified that he saw Cody throw liquid from his beverage cup into the truck and onto Dugan, but Dugan testified that Cody spit whatever he was drinking onto him. Dugan then pulled the truck forward a few feet, but was blocked from driving further by another vehicle that was stopped in the drive-thru lane. Before Dugan could reverse the truck, Cody proceeded to pull out a can of mace, reached out from the adjacent employee side door, and sprayed mace into the truck through the driver's side window, causing physical harm to Dugan and Doughman. Cody then fled the scene.

{¶ 5} Dugan and Doughman then called the police and provided statements. Misty informed the police that she did not want to say what had happened, but did make a written statement that there was an argument between Cody and the men in the truck, and "someone spit or sprayed stuff." Cody was arrested later that day.

{¶ 6} A bench trial was held on March 23, 2023. The state presented testimony

from Dugan, Doughman, and Deputy Kelly Grogan of the Clinton County Sheriff's Department. Misty testified for the defense and recounted that Dugan and Doughman used "the N-word" toward Cody during the confrontation. At the close of trial, the defense argued that based on Misty's testimony and a statement made by another witness who did not testify at trial, Cody may have felt threatened and acted in self-defense. The trial court then found Cody guilty of two counts of assault.

{¶ 7} Cody appealed his conviction, raising two assignments of error for our review.

{¶ 8} Assignment of Error No. 1:

{¶ 9} MR. CODY'S CONVICTION WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16, OF THE OHIO CONSTITUTION.

{¶ 10} Cody does not deny causing physical harm to Dugan and Doughman. Rather, in his first assignment of error, Cody claims his convictions are not supported by sufficient evidence because he sprayed mace onto Dugan and Doughman in self-defense and the state failed to prove beyond a reasonable doubt that he did not act in self-defense. However, Cody's challenge to the sufficiency of the evidence insofar as it invokes self-defense is inappropriate. *State v. Bagley*, 3d Dist. Auglaize No. 2-22-02, 2023-Ohio-43, ¶ 18. The "due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *State v. Vasquez*, 10th Dist. Franklin No. 13AP-366, 2014-Ohio-224, ¶ 52, quoting *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37. Rather, the state's burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal. *State v. Messenger*, 171 Ohio St. 3d 227, 2022-Ohio-

4562, ¶ 27.

{¶ 11} Cody's self-defense contentions are therefore consigned to our analysis of the manifest weight of the evidence. Cody presents no other argument as to the sufficiency of the evidence.

{¶ 12} Cody's first assignment of error is overruled.

{¶ 13} Assignment of Error No. 2:

{¶ 14} MR. CODY'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16, OF THE OHIO CONSTITUTION.

{¶ 15} In his second assignment of error, Cody claims that his convictions are not supported by the manifest weight of the evidence because the evidence presented falls short of proving beyond a reasonable doubt that he did not act in self-defense.

{¶ 16} In support of this claim, Cody asserts that he feared for his own safety because he knew Dugan carried a knife, Dugan and Doughman outnumbered him and immediately began arguing with him on their arrival, and Dugan and Doughman threatened him by calling him "the N-word" multiple times during the incident as testified by Misty. Cody further claims Dugan and Doughman are not credible witnesses because: (1) Doughman's written statement to the police was inconsistent with his testimony at trial on whether Cody began "cussing" at them when they pulled into the drive-thru lane or when they pulled up to the drive-thru window itself; and (2) Dugan and Doughman contradicted each other's testimony whether Cody was already standing behind Misty or whether Cody walked up to the window when their truck arrived; (3) whether Cody spat or threw a beverage at Dugan; and (4) whether Cody sprayed mace from the window or from the side door.

{¶ 17} A manifest weight of the evidence challenge examines the "inclination of the

greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio- 818, ¶ 43.

{¶ 18} We recognize the sound principle that "the trier of fact is best positioned to weigh the credibility of the individual witness and reach a conclusion based on the totality of the evidence." *State v. Carter*, 12th Dist. No. CA2013-12-228, 2014-Ohio-4174, ¶ 21. Dugan's and Doughman's testimonies were consistent that they were sitting in the truck when Cody chose to confront them, Cody cast some liquid onto Dugan—whether spit or a beverage, and then quickly afterward Cody sprayed mace into the truck without provocation. The timeline of events was consistent between Dugan and Doughman, and any discrepancies in Cody's exact positioning were not significant. On the other hand, Cody fled the scene despite claiming he was justified in acting in self-defense, and neither he nor Misty contacted the police. The credibility of Misty's testimony was further strained where she claimed Dugan and Doughman called Cody "the N-word," but made no such claim in her original written statement on the day of the incident.

{¶ 19} It is well established that "[a] person may not provoke an assault or voluntarily

enter an encounter and then claim a right of self-defense." *State v. Himes*, 12th Dist. Butler No. CA2023-03-030, 2023-Ohio-3561, ¶ 25. Here, the evidence establishes that Dugan and Doughman were inside their truck in the drive-thru lane while Cody was working inside the building—yet Cody chose to approach the drive-thru window, get into a heated exchange, heave liquid on Dugan, and ultimately spray mace out from the building and into the truck. The trial court did not clearly lose its way in weighing the testimony and finding that Cody did not act in self-defense but was instead the aggressor and assaulted Dugan and Doughman.

{¶ 20} Cody's second assignment of error is overruled.

{¶ 21} Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.