[Cite as *State v. Agnew*, 2024-Ohio-874.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-05-054 |
| | : | O P I N I O N |
| - vs - | | 3/11/2024 |
| | : | |
| WILLIAM THOMAS C. AGNEW, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY AREA III COURT
Case Nos. CRB 2200758 A & B

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Michele Temmel, for appellant.

**PIPER, J.**

{¶ 1}  On January 24, 2022, appellant, William Agnew, was charged with two counts of assault pursuant to R.C. 2903.13(A), each a misdemeanor of the first degree. The charges arose from an altercation on January 20, 2022, during which appellant deployed pepper spray into the faces of Bryson Teague and Caleb Boller.  Appellant pled

not guilty to the charges and the matter proceeded to a jury trial on February 6, 2023. The jury found appellant guilty as charged. Appellant now timely appeals from his convictions.

{¶ 2} On January 20, 2022, appellant, a 42-year-old man, engaged in an argument with four young men near the intersection of Magnolia Drive and Southpointe Parkway in Oxford, Ohio. The young men, Caleb Boller, Bryson Teague, Ethan Trautman, and Jack Albrecht were stopped at a stop sign on Magnolia Drive in a black Ford Mustang. Magnolia Drive dead ends to Southpointe Parkway creating a "T" intersection. Appellant had the right-of way on Southpointe Parkway and was about to pass in front of the stopped Mustang. Upon seeing the Mustang, appellant believed it was going to follow him. Appellant then pulled his vehicle diagonally into the left-hand lane of Southpointe Parkway, which was the lane for oncoming traffic. He stopped in the vicinity of the corner, a few feet from the Mustang. As a result of appellant's maneuver, his vehicle blocked the Mustang from the possibility of turning right onto Southpointe Parkway.

{¶ 3} Appellant promptly exited his vehicle to confront the occupants of the Mustang. A portion of the incident was captured on the dash camera of appellant's vehicle. The driver, Trautman, and passenger, Albrecht, exited the Mustang. After a back-and-forth argument continued, Boller also exited the Mustang. The argument continued for a few more minutes, and Teague exited the Mustang. Appellant sprayed Teague in the face with pepper spray. Boller reacted to Teague being sprayed in the face by punching appellant several times. Appellant then sprayed Boller in the face as well. The appellant then left the scene and called 911 to report that he had been assaulted. An investigation followed which included two interviews with appellant, one the night of

the incident and the other the following day. Two nearby residents observed a substantial portion of the events.

{¶ 4} At trial, Boller, Albrecht, Teague, and officers with the City of Oxford Police Department testified on behalf of the state as well as the two witnesses, Grace Baugh and Caleb Edwards. Video recordings of appellant's interviews with the police department and the dash-cam footage were played at trial and admitted into evidence. Appellant then testified in his own defense.

{¶ 5} The trial testimony revealed that appellant worked as a DoorDash delivery driver. On the night of the incident, appellant had just completed a delivery at 3627 Southpointe Parkway in Oxford, Ohio around 10:30 p.m. Grace Baugh and Caleb Edwards were the recipients of the DoorDash delivery, and confirmed at trial that appellant was the DoorDash delivery driver who had just delivered their order.

{¶ 6} The occupants of the Mustang were confused by appellant's actions when he stopped his vehicle in the middle of the road, near the Mustang. Trautman inched forward and began "revving" his engine looking in appellant's direction. When appellant exited his vehicle, Trautman and Albrecht exited the Mustang to see what the problem was. During the verbal confrontation, appellant claimed someone was "after him" and accused the young men of following him. Shortly thereafter, Boller got out of the Mustang and unsuccessfully attempted to diffuse the situation.

{¶ 7} Baugh and Edwards noticed the commotion, which was close in proximity to where their food had been delivered. Baugh recognized the Mustang's occupants, and approached the scene of the incident to ensure everything was okay. As she approached the intersection, Baugh noticed appellant was "freaking out" and "frantic" because he thought the Mustang was following him.

{¶ 8} Appellant continued arguing with the Mustang's occupants until the final passenger of the Mustang, Teague, got out of the vehicle and approached appellant. Teague's approach is largely captured on the dash-cam recording and was described at trial as an unaggressive walk without any threatening body language. When Teague was approximately five feet from appellant, appellant removed a canister of pepper spray from his pocket and sprayed Teague in the face without warning. Teague immediately retreated, as it felt like his skin was melting off, and Boller stepped toward appellant and punched him in the face. As Boller stepped closer, appellant retrieved a taser from his pocket and attempted to tase Boller. When the taser failed, appellant sprayed pepper spray at Boller while Boller continued punching appellant. After a few seconds, Boller walked away to tend to his burning eyes and face.

{¶ 9} Baugh and Edwards, who witnessed the encounter, testified there was no reason for appellant to pepper spray Teague that evening. According to Edwards, it was appellant who initiated the incident and continued to escalate the argument. With regard to Teague, Baugh testified that, when he was sprayed with the pepper spray, Teague was "not close" to appellant. Although the young men were using profanity and yelling loudly at appellant, neither Baugh nor Edwards heard any threats between appellant and the Mustang's occupants. Rather, Baugh testified there were no physical threats, actions, or movements toward appellant until appellant initiated violence by deploying the pepper spray.

{¶ 10} According to appellant, the Mustang was "hot rodding," "spinning the wheels," and "lunging forward" as he drove close to the intersection of Southpointe Parkway and Magnolia Drive. Appellant claimed he decided, for safety reasons, to make a left-hand turn to avoid the Mustang. However, appellant stopped his vehicle short of

making a turn even though appellant had the right of way. At that point, appellant stated he noticed the occupants of the Mustang were "flipping [appellant] off and yelling something from the car."

{¶ 11} Contrary to testimony from the state's witnesses, appellant claimed he only left his vehicle after three of the Mustang's passengers exited their car and approached his vehicle. At that time, appellant had the taser and pepper spray in his pocket, but said he believed the situation could be easily de-escalated. After speaking with the three young men, during which they were "screaming" at him, appellant determined the situation was a misunderstanding. According to appellant, the Mustang's occupants believed he had done something to them or was disrespecting them, but appellant represented he was "calm and cool" throughout the encounter. Appellant claimed he was not threatened by the screaming and described the young men's comments as "mostly trash talk and cursing[.]"

{¶ 12} Appellant stated he believed the encounter was dying down when a fourth passenger got out of the Mustang, immediately walked up to appellant, and "literally got in [his] face." This testimony was inconsistent with the statements provided during appellant's interviews, during which appellant indicated Teague "rushed" toward appellant. Appellant claimed that, after getting in appellant's face, the passenger, Teague, "made a sudden move," which involved him "jerking" towards appellant "like he was going to punch [appellant] and started attacking [appellant]." At that point, appellant said he feared for his safety because he saw "four people around [him] acting aggressively." When asked to clarify how the Mustang's occupants were aggressive, appellant indicated they continued to walk closer to him and were cussing at him. Because of the circumstances, appellant "felt that [he] had to resort to self-defense," and

"pepper sprayed" Teague in his face.

{¶ 13} Appellant further testified that, after he initially sprayed Teague, Boller proceeded to punch appellant 30 times. During that time, appellant attempted to use his taser as he was knocked to the ground, but it had no effect on Boller. Then, as appellant had his hands over his head, he sprayed his pepper spray upwards towards Boller's face. Boller finally stopped punching appellant, the young men retreated, and appellant ran to his car to call 911. Notably, neither the videos admitted into evidence, nor any photographs reveal any injuries to appellant.

{¶ 14} On cross-examination, appellant indicated the Mustang aggressively approached the intersection by "hot rodding," "fishtailing," "squealing" its tires, and "weaving back and forth." Appellant testified that, although those actions may not be on the video, he observed them. He further confirmed that, on the recording, he can be heard getting out of his vehicle and speaking to the Mustang's occupants first by asking, "what are you revving your gears for?" According to appellant, he wanted to get a better look at the occupants in the Mustang because he frequently delivered DoorDash in the area, and they could have been involved with recent "gang stalking" incidents.

{¶ 15} Appellant confirmed that no one made any verbal threats toward him that evening. Appellant also acknowledged that, although the others were getting "close" to him and "surrounding him," he did not use the pepper spray until Teague approached him. Appellant stated he warned Teague and the others not to come any closer, but Teague continued walking.[1] Aside from stating the move was a "quick sudden move," appellant could not elaborate on the movement by Teague.

---

1. Such a warning cannot be heard on the dash-cam video. Furthermore, the witnesses represented just the opposite, that there was no warning from appellant prior to Teague being sprayed in the face.

{¶ 16} After considering the evidence, the jury rejected appellant's claim of self-defense and found him guilty of the charged offenses. The trial court sentenced appellant on both counts to 180 days in jail with 135 days suspended and credit for 20 days served. The trial court imposed a fine of $200 plus costs and restitution totaling $170.00. The trial court further ordered appellant to serve two years of probation, a part of which included a drug, alcohol, and mental health assessment, and to have no contact with the victims.

{¶ 17} Appellant now appeals, raising the following assignment of error for our review:

{¶ 18} THE JURY'S GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE MR. AGNEW ACTED IN SELF-DEFENSE.

{¶ 19} On appeal, appellant does not dispute that he committed assault in violation of R.C. 2903.13(A) when he deployed pepper spray into the faces of Teague and Boller. Instead, appellant argues his assault conviction is against the manifest weight of the evidence because his acts were justified, and the state failed to disprove he acted in self-defense. Specifically, appellant claims it is clear he acted in self-defense because he did not approach the young men or the Mustang, but all four of the Mustang's occupants exited their vehicle and approached appellant. Appellant further suggests that, if he had not acted in self-defense, the Mustang's occupants would have "pummeled" him.

{¶ 20} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Clemmons*, 12th Dist. Butler No. CA2020-01-004, 2020-Ohio-5394, ¶ 15. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether

in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

{¶ 21} Questions regarding witness credibility and weight of the evidence are primarily matters for the trier of fact to decide because the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. *Id.* at ¶ 16. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*; *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 22} In addition to the elements of assault, the state had the burden of proving beyond a reasonable doubt that the accused did not act in self-defense. *See* R.C. 2901.05(B)(1) (effective March 28, 2019). When the use of nondeadly force is involved, an accused is justified in using force against another if (1) he was not at fault in creating the situation giving rise to the altercation and (2) he had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and his only means to protect herself from the danger was by the use of force not likely to cause death or great bodily harm. *Clemmons* at ¶ 22. Pursuant to amended R.C. 2901.05, the state only has to "disprove one of the elements of self-defense beyond a reasonable doubt." *Id.*

{¶ 23} In this case, the greater amount of credible evidence offered at trial established beyond a reasonable doubt that appellant was at fault in creating the situation giving rise to the altercation with Teague and Boller. Pursuant to appellant's own dash-cam recording, it is evident the Mustang was properly at the stop sign waiting for appellant to proceed through the intersection when appellant maneuvered his vehicle toward the

Mustang, stopping short in the wrong lane of Southpointe Parkway. Appellant acknowledged he could have continued straight through the intersection but claimed he abruptly stopped to "get a better look" at the Mustang's occupants. However, to do so, appellant parked diagonally in the oncoming traffic lane, partially blocking the Mustang. He then exited his vehicle to confront whoever was in the Mustang. During the confrontation, appellant, who was unknown to the Mustang's occupants, was "frantic" and "freaking out" and accused the young men of following him. Despite being outnumbered and describing the Mustang's occupants as "aggressive," appellant acknowledges he did not feel threatened. The witnesses described appellant as initiating the confrontation and escalating the argument. Appellant used force although no threat of force against him existed.

**{¶ 24}** It is well established that "[a] person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense." *State v. Himes*, 12th Dist. Butler No. CA2023-03-030, 2023-Ohio-3561, ¶ 25; *State v. Cody*, 12th Dist. Clinton No. CA2023-05-010, 2023-Ohio-4781, ¶ 19. Such is the case here.

**{¶ 25}** The jury was tasked with sorting through the conflicting versions of the events as they unfolded. As the trier of fact, the jury was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations to judge the credibility of witnesses and the weight to be given the evidence. *Clemmons*, 2020-Ohio-5394 at ¶ 24. Appellant's conviction was not against the manifest weight of the evidence simply because the trier of fact believed the testimony and evidence presented by the state. *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

**{¶ 26}** The jury did not clearly lose its way in finding that appellant did not act in

self-defense but was instead the aggressor who created the situation giving rise to the altercation with Teague and Boller. Appellant was not justified in his act of injecting violence into the situation, which created the altercation. His testimony was less than credible and overwhelming evidence discredited the claim of self-defense.

{¶ 27} Accordingly, because the state proved beyond a reasonable doubt that appellant did not act in self-defense and knowingly caused physical harm to Teague and Boller by deploying pepper spray in their faces, we find that appellant's assault convictions are not against the manifest weight of the evidence. Appellant's assignment of error is overruled.

{¶ 28} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.