[Cite as *State v. Ramey*, 2024-Ohio-5635.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-05-011 |
| | : | O P I N I O N |
| - vs - | | 12/2/2024 |
| | : | |
| ANGELA K. RAMEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WASHINGTON COURT HOUSE MUNICIPAL COURT
Case No. CRB 2300585

Shannon M. Treynor, for appellant.

**PIPER, J.**

{¶1} Appellant, Angela K. Ramey, appeals her conviction in the Washington Court House Municipal Court for one count of first-degree misdemeanor assault. For the reasons outlined below, we affirm Ramey's conviction.

**Facts and Procedural History**

{¶2} On October 5, 2023, a complaint was filed charging Ramey with one count of first-degree misdemeanor assault in violation of R.C. 2903.13(A). The charge arose after it was alleged Ramey was involved in a physical altercation with her neighbor, the

victim, Vanessa L. Walker, on the afternoon of September 28, 2023.[1]  This altercation occurred on the front porch of Walker's Washington Court House home.  There is no dispute that this altercation caused Walker to suffer deep bruising and swelling to her face, significant blood loss, as well as a broken nose.  There is also no dispute that at the time of the altercation Ramey was 36 years old, whereas Walker was 62 years old with a pacemaker.

{¶3}    On February 14, 2024, Ramey filed a notice indicating her intent to argue self-defense.  Six weeks later, on March 28, 2024, the matter proceeded to a one-day jury trial.  During trial, the jury heard testimony and accepted evidence from a total of seven witnesses.  This included the jury viewing the footage taken from a responding officer's body camera.  This also included one of the responding officers testifying that Ramey had told him that she had attacked Walker and "beat her ass," something that Ramey advised this officer would likely result in her being sent to jail for assault.  This is in addition to the jury hearing testimony from both the victim, Walker, and the defendant, Ramey.  The following is a summary of that testimony.

*Summary of Walker's Trial Testimony*

{¶4}    Walker testified that, after sitting outside on her porch drinking a beer for approximately 30 minutes, she observed Ramey coming down the street, walking toward her house.  Walker testified that upon Ramey's arrival on the street outside her house, she and Ramey began "having words" with one another, the topic of which Walker could not remember.  Walker then testified that, during their exchange of words, Ramey began walking through her yard and up to the front porch where she had been sitting drinking her beer.  Walker testified that Ramey then got up in her face and struck her "once on the

___

1. For privacy purposes, this court has provided the victim with a fictitious name

right side of [her] face and [her] temple, and actually knocked [her] unconscious."

{¶5}   Walker testified that, shortly after being struck by Ramey, she woke up on her hands and knees in a pool of blood. When asked if she ever hit or grabbed Ramey that day, Walker testified, "No." Walker also denied having any words with Ramey's children that day, "because whenever they would come out to play and I was sitting on my porch, or they were out there playing I would go in the house just so there wouldn't be any confrontation." This is in addition to Walker denying that she had ever called Ramey's children "any ethnic names or anything like that . . . ." This included Walker denying ever calling Ramey's youngest son, who, at that time was ten months old, the "N" word.

*Summary of Ramey's Trial Testimony*

{¶6}   Ramey testified that, after learning from her ten-year-old son that Walker was calling the neighborhood children "bastards," "bitches," and "little assholes" again, she stopped what she was doing and began walking down the street towards Walker's house "to tell her not to do that anymore." Ramey testified that she did this despite the "numerous" previous attempts at getting Walker to stop had failed. Ramey then testified that, upon her arriving on the street outside of Walker's home, she told Walker, "not to talk to my ten-year-old like that anymore," calling him a bastard or a bitch, and "[t]hat I told her numerous times not to do that." Ramey testified that Walker then turned toward her and started calling her names, too. Ramey testified that this also included Walker calling her then ten-month-old son the "N" word.

{¶7}   Ramey testified that this was when she "stepped a little closer" to Walker and "asked her to repeat herself cause I wasn't sure if I heard her correctly because that's not something that I'm used hearing from where I'm from." Ramey testified that Walker then, surprisingly, said the "N" word again. Ramey testified that Walker then reached out and "she struck me," so "I just fought too." Ramey testified that this included her punching

Walker with a closed right fist upwards of six times. Ramey testified that, after punching Walker those six times, she then immediately attempted to remove herself from Walker's front porch, but that Walker was holding onto her shirt and would not let her go. Ramey testified that Walker did eventually let go, however, and when that occurred, Ramey testified that she exited off Walker's property and walked back down the street to her house. Describing how she felt about the fight, Ramey testified that she had acted in self-defense, "[b]ecause she [Walker] hit me first," which required her to "stand up" and "protect" herself.

*The Jury's Verdict, the Trial Court's Sentence, and Ramey's Appeal*

{¶8} There is no dispute that the trial court provided a proper self-defense instruction to the jury as part of its final jury instructions. Specifically, the trial court instructed the jury on self-defense as follows:

> A person is allowed to use non-deadly force in self-defense. The state must prove beyond a reasonable doubt that the defendant, when using non-deadly force, did not act in self-defense.
>
> To prove that the defendant's use of non-deadly force was not in self-defense, the state must prove beyond a reasonable doubt at least one of the following:
>
> 1. The defendant was at fault in creating the situation; or
>
> 2. The defendant did not have reasonable grounds to believe that she was in imminent danger of bodily harm; or
>
> 3. The defendant did not have any honest belief, even if mistaken, that she was in imminent danger of bodily harm; or
>
> 4. The defendant used unreasonable force.
>
> In deciding whether the defendant had reasonable grounds to believe and an honest belief that she was in imminent danger of bodily harm, you must put yourself in the position of the defendant, with her characteristics, her knowledge or lack of knowledge, and under the circumstances and conditions that surround her at the time. You must consider the conduct of

[Vanessa K. Walker] and decide whether her acts and words caused the defendant reasonably and honestly to believe that she was about to receive bodily harm.

Words alone do not justify the use of force. Resort[ing] to such force is not justified by abusive language, verbal threats, or other words, no matter how provocative.

If the defendant used more force than reasonably necessary and if the force used was greatly disproportionate to the apparent danger, then the defense of self-defense is not available.

{¶9} After the trial court provided its final instructions to the jury, and following the jury's deliberations, the jury returned a verdict finding the state had proven, beyond a reasonable doubt, that Ramey had not acted in self-defense, but had instead assaulted Walker, thereby returning a guilty verdict against Ramey. Approximately three weeks later, on April 18, 2024, the trial court held a sentencing hearing. During this hearing, the trial court sentenced Ramey to serve 180 days in jail, with 150 of those days suspended, ordered Ramey to pay a $250 fine plus court costs, and placed Ramey on two years of reporting probation. The following month, on May 9, 2024, Ramey filed a notice of appeal. Following briefing, on November 6, 2024, Ramey's appeal was submitted to this court for consideration.[2] Ramey's appeal now properly before this court for decision, Ramey has raised two assignments of error for review.

**Assignment of Error No. 1:**

{¶10} THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE STATE FAILED TO PROVE THAT THE DEFENDANT DID NOT

---

2. We note that the state did not file an appellee brief with this court. Pursuant to App.R. 18(C), when an appellee fails to file a brief, "in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." "Whether to accept an appellant's statement of facts and issues as correct under these circumstances is within this court's sound discretion." *Skyward Learning Servs. v. Gray*, 2020-Ohio-1182, ¶ 2 (12th Dist.), citing *Moore v. Guyton*, 2013-Ohio-143, ¶ 9 (3d Dist.). Therefore, as it has done previously, this court will exercise its discretion as provided to it by App.R. 18(C) and accept Ramey's statement of facts and issues as alleged in her brief in determining this appeal.

ACT IN SELF DEFENSE.

{¶11} In her first assignment of error, Ramey argues her conviction is against the manifest weight of the evidence because the state failed to disprove, beyond a reasonable doubt, that she had not acted in self-defense. We disagree.

*Manifest Weight Standard of Review*

{¶12} "Unlike the sufficiency-of-the-evidence standard of review," which addresses the state's burden of production, "'a manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion.'" *State v. Casey*, 2024-Ohio-689, ¶ 10 (12th Dist.), quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lewis*, 2020-Ohio-3762, ¶ 18 (12th Dist.), citing *State v. Wilks*, 2018-Ohio-1562, ¶ 168. But, even then, a determination regarding the witnesses' credibility is primarily for the trier of fact to decide. *State v. Baker*, 2020-Ohio-2882, ¶ 30 (12th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Therefore, given that it is primarily the trier of fact who decides witness credibility, this court will overturn a conviction on manifest-weight grounds "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 2020-Ohio-3835, ¶ 10 (12th Dist.).

*Assault in Violation of R.C. 2903.13(A)*

{¶13} Ramey was found guilty of assaulting Walker in violation of R.C. 2903.13(A). Pursuant to that statute, "[n]o person shall knowingly cause or attempt to

cause physical harm to another or to another's unborn."  As defined by R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration."  R.C. 2901.01(A)(3).  "A victim's testimony is all that is needed to 'sustain a conviction for assault in violation of R.C. 2903.13(A) if the victim's testimony proves all the elements of the offense.'"  *State v. Wing*, 2023-Ohio-4171, ¶ 20 (12th Dist.), quoting *State v. Lunsford*, 2020-Ohio-965, ¶ 13 (12th Dist.).  The state must prove these elements beyond a reasonable doubt.  *See State v. Lewis*, 2020-Ohio-3762, ¶ 28 (12th Dist.).  "Proof beyond a reasonable doubt" is defined by R.C. 2901.05(E) to mean "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs."

*The Elements of Non-Deadly Self-Defense*

**{¶14}** In this case, in addition to the elements of assault in violation of R.C. 2903.13(A), the state also had the burden of proving beyond a reasonable doubt that Ramey did not act in self-defense.  *See State v. Agnew*, 2024-Ohio-874, ¶ 22 (12th Dist.). When the use of nondeadly force is involved, such as the case here, the defendant is justified in using force against another if: (1) she was not at fault in creating the situation giving rise to the altercation; and (2) she had reasonable grounds to believe and an honest belief, even though mistaken, that she was in imminent danger of bodily harm and her only means to protect herself from the danger was by the use of force not likely to cause death or great bodily harm.  *State v. Clemmons*, 2020-Ohio-5394, ¶ 22 (12th Dist.).  "The first element of a self-defense claim does not require in all situations that the defendant must have refrained from throwing the first punch or a showing that the defendant played no part in creating the situation giving rise to the affray."  *State v. Himes*, 2023-Ohio-3561,

¶ 24 (12th Dist.). "Rather, the first element of a self-defense claim provides that the defendant must not be at fault in creating the situation that gave rise to the affray." *State v. Elam*, 2022-Ohio-1895, ¶ 14 (12th Dist.). "This concept is broader than simply not being the immediate aggressor." *Id.* That is all to say, a person may not provoke an assault, or voluntarily enter an encounter, only to then claim a right of self-defense. *State v. Cody*, 2023-Ohio-4781, ¶ 19.

*Ramey's Argument and Analysis*

{¶15} "The self-defense elements and the state's burden can be confusing, because this is the rare situation when the General Assembly requires the state to disprove a fact or element." *State v. Haley*, 2024-Ohio-2303, ¶ 105. Ramey, however, argues the evidence in this case "clearly set forth the elements of self-defense, which should have operated as a complete defense to the alleged assault." To support this claim, Ramey argues that she had "no part" in creating the "hostile situation" that ultimately resulted in her confronting Walker and punching her in the face upwards of six times. Ramey also argues the evidence in this case establishes that it was Walker who "threw the first punch" and then "refused to allow [her] to retreat by hanging onto her," which Ramey claims justified her punching Walker in the face and breaking her nose.

{¶16} But, contrary to Ramey's claim, the evidence establishes that it was Ramey who decided to leave her own home and walk down the street to exchange unpleasantries with Walker after learning from her ten-year-old son that Walker was calling the neighborhood children "bastards," "bitches," and "little assholes" again. It was also Ramey who escalated the initial war-of-words into a physically threatening encounter by exiting off the street in front of Walker's house and confronting Walker on her front porch

after Walker purportedly called Ramey's then ten-month old son the "N" word.[3] By coming onto Walker's porch, and then asking Ramey to repeat herself, including her use of the "N" word, this was, in essence, the 36-year-old Ramey challenging the 62-year-old Walker to a fight. Self-defense is not available as a defense under these circumstances.

{¶17} In so holding, we note that, given its verdict, the jury clearly disbelieved some or all of Ramey's trial testimony, and instead accepted the state's theory of the case, in whole or in part. This was well within the jury's purview as the trier of fact and ultimate factfinder. *State v. Ell*, 2023-Ohio-4583, ¶ 13 (12th Dist.). We also note that the jury did not have to accept Ramey's claim of self-defense simply because she asserted the defense at trial. *State v. Simmons*, 2021-Ohio-3563, ¶ 76 (12th Dist.). In fact, given the evidence indicating Ramey admitted to a responding officer that she had attacked Walker and "beat her ass," something which Ramey told this officer she believed would likely result in her being sent to jail for assault, Ramey herself did not accept her own self-defense claim. *See, e.g., id.* (verdict not against manifest weight and jury did not need to accept defendant's claim of self-defense when defendant provided statement to police sergeant "shortly after the incident occurred, wherein [the defendant] admitted that he 'fucked up' and that he was 'sorry'"). Therefore, because a conviction is not against the manifest weight of the evidence merely because the jury believed the testimony and evidence presented by the state, Ramey's conviction was not against the manifest weight of the evidence. *State v. Moore*, 2021-Ohio-1856, ¶ 17 (12th Dist.). Accordingly, finding no merit to any of Ramey's arguments raised herein, Ramey's first assignment of error is overruled.

---

3. Walker denied using the "N" word to describe Ramey's then ten-month-old son on the day in question. Walker, in fact, denied ever using any derogatory language towards or to describe Ramey's children. Walker did acknowledge, however, that she "occasionally" uses the "N" word when speaking, but that she tries not to use the word too "frequently" because she is "not racist."

**Assignment of Error No. 2:**

**{¶18}** THE DEFENDANT'S CONVICTION FOR ATTEMPTED ASSAULT CONSTITUTES PLAIN ERROR AS THE SAME IS NOT COGNIZABLE UNDER OHIO LAW.

**{¶19}** In her second assignment of error, Ramey argues that because, when announcing the jury's verdict, the jury foreman stated that the jury had found her guilty of "attempted assault," a crime Ramey claims is not cognizable under Ohio law, rather than simply "assault," her conviction amounts to plain error and must be reversed. However, while it may be true that the jury foreman indicated that the jury had found Ramey guilty of "attempted assault," the complaint filed in this case did not charge Ramey with "attempted assault" in violation of Ohio's attempt statute, R.C. 2923.02(A). The complaint instead charged Ramey with first-degree misdemeanor assault in violation of Ohio's assault statute, R.C. 2903.13(A).

**{¶20}** Moreover, while it may be true that the crime of "attempted assault" is not generally cognizable under Ohio law when charged as an attempt under R.C. 2923.02(A), the trial court never instructed the jury on "attempted assault" as a crime in and of itself. *See State v. McCornell*, 2009-Ohio-1245, ¶ 25-29 (8th Dist.) (concluding that appellant could not be found guilty of attempting to violate R.C. 2903.13[A]). The trial court instead instructed the jury on the charge of assault in violation of R.C. 2923.02(A) as set forth in the complaint. Specifically, the trial court instructed the jury on the charge of assault as follows:

> The Defendant is charged with Assault. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 28th day of September, 2023, and in the City of Washington Court House, Fayette County, Ohio, the defendant knowingly caused or attempted to cause physical harm to [Vanessa L. Walker].

The trial court then went on to further define the terms knowingly, causation, attempt, and physical harm. The jury's verdict form also specifically notes that the jury found Ramey guilty of "[a]ssault in violation of Section 2903.13 of the Ohio Revised Code as charged in the complaint." The complaint, as noted above, expressly stated that Ramey was charged with one count of first-degree misdemeanor assault in violation of R.C. 2903.13(A).

{¶21} What is more, and what simply cannot be ignored, is the trial court's journal entry expressly states that Ramey was not found guilty of "attempted assault" in violation of R.C. 2923.02(A), but rather of "the charge of ASSAULT in violation of R.C. 2903.13[A] . . . ." It is well settled that the trial court speaks only through its journal entries. *State v. Dinka*, 2022-Ohio-1365, ¶ 6 (12th Dist.). Therefore, while it certainly would have been preferrable in this case for the jury foreman to announce the jury's verdict as finding Ramey guilty of assault rather than of "attempted assault," it nevertheless appears that this reference to "attempted assault" was nothing more than a one-time slip of the tongue. A slip of the tongue is not sufficient to warrant a reversal in this case. *See, e.g., State v. Rentschler*, 2023-Ohio-3009, ¶ 85 (3d Dist.) ("Upon examining the trial court's apparent slip of the tongue in the context of the overall charge on multiple counts, we cannot say that the same rises to plain error."). This is particularly true in this case when considering Ramey has failed to demonstrate how this slight verbal slipup was prejudicial to her and resulted in her being convicted of assault when she otherwise would have not. Accordingly, finding no merit to Ramey's argument raised herein in support of her second assignment of error, Ramey's second assignment of error is also overruled.

## Conclusion

{¶22} For the reasons outlined above, and having found no merit to either of Ramey's two assignments of error, Ramey's appeal of her conviction for one count of

first-degree misdemeanor assault in violation of R.C. 2903.13(A) is denied.

{¶23} Judgment affirmed.

BYRNE, P.J., and HENDRICKSON, J., concur.